**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| NANCY GIOVINALE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-986 |
| | § | |
| JP MORGAN CHASE BANK, N.A., | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is defendant JP Morgan Chase Bank, N.A.'s ("Chase") motion for summary judgment. Dkt. 25. Having considered the motion, response, reply, supplemental briefing, record evidence, and applicable law, the court finds that Chase's motion should be GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

Giovinale is seeking recovery from Chase for allegedly unauthorized withdrawals from her account. Dkt. 35. Beginning on approximately January 1, 2013, twenty-five disputed withdrawals were made from Giovinale's accounts with Chase, totaling $475,890.[1] Dkt. 25-8, Exs. 6–7; Dkt. 25 at 13–14 (tabulating transactions).

The first seven disputed transactions took place between January and March 2013 and were completed by electronic wire transfer. Dkt. 25-8, Ex. 7. Chase claims that it sent monthly bank

---

[1] The motion, response, and summary judgment evidence also reference allegedly fraudulently terminated certificates of deposit. Dkt. 25 at 17; Dkt. 28-1 at 7. However, the court does not find any cause of action regarding these transactions in Giovinale's first amended complaint. Dkt. 35.

statements, which included the disputed transactions, to Giovinale's address of record in Venezuela through March 2013. Dkt. 25-8, Ex. 4 at 2–5.

In March 2013, Chase processed an address change on Giovinale's account and Giovinale's address of record was changed to Miami, Florida. Dkt. 24-8, Ex. 4 at 6. Giovinale states that she did not authorize the address change and that it was changed fraudulently. Dkt. 25-8, Ex. 5 at 23. After the address changed, a new check book was requested and sent to the address in Miami. Dkt. 25, Ex. D (Talbot Dec.) at 3. Subsequently, eighteen allegedly fraudulent checks were written between March and August 2013. Dkt. 24-8, Ex. 4 at 6–18. Chase claims that it sent monthly statements that included the withdrawals made by these checks to the disputed address of record in Miami. *Id*.

Giovinale lives in Venezuela, and she monitors her Chase account with the assistance of her daughter Maria Giovinale. Dkt. 25, Ex. A (Giovinale Dep.) at 3. Initially, Maria Giovinale received the bank statements regularly at her residence in Katy, Texas. *Id*. at 4; Dkt. 25-9. In 2011, Maria Giovinale moved abroad, and the Giovinales changed the mailing address on the account to Nancy Giovinale's Venezuelan address. Dkt. 25, Ex. A at 4. When Giovinale stopped receiving statements, she assumed it was because of the Venezuelan postal system's poor service. *Id*. at 3. However, Giovinale admits that she "sporadically" received statements in Venezuela prior to 2013, but because she did not read or speak English, she would destroy them without reading them. *Id*. Giovinale admittedly never contacted Chase about not receiving statements. *Id*.

Richard Talbot, a former personal banker with Chase, interacted with a person who contacted him in January 2013 claiming that she was Giovinale and asking to unlock the account for transactions. Dkt. 25, Ex. D at 2–3. Talbot claims that he attempted to verify the caller's identity

as Giovinale by asking security questions about her social security number, account numbers, name of the account beneficiary, and balance of accounts before releasing the accounts to the caller. *Id.* at 4. Talbot says the caller answered all the identify questions correctly. *Id*. The same caller contacted Talbot several times in 2013, and eventually ordered checks for the account, though Talbot did not process the order. *Id*. Talbot claims that he asked the caller to verify her identity as Giovinale in each phone call. *Id*. Also, Talbot reviewed the disputed checks written against Giovinale's account and compared them with the signature card on file for the account, and concluded that the signatures were "substantially similar." *Id.* at 3.

Giovinale claims that she did not discover the fraudulent withdrawals until July 2013 when Maria Giovinale returned to the United States and attempted to access the account. Dkt. 25, Ex. A at 9. On August 14, 2013, Giovinale notified Chase of the alleged fraudulent withdrawals. Dkt. 28-6. On August 16, Chase sent a letter to Giovinale denying her claims for reimbursement because of her failure to notify the bank within thirty days of the banking statements that included the allegedly fraudulent transactions. Dkt. 28-9. On August 26, Giovinale filed a new customer complaint form, requesting, again, that Chase investigate the disputed transactions. Dkt. 25-8, Ex. 5.

On January 20, 2016, Giovinale filed an original petition against Chase in the 164th Judicial District Court for Harris County, Texas. Dkt. 1, Ex. B. Giovinale's original complaint did not completely enumerate her causes of action, but Chase's partial motion to dismiss identified the following causes of action: an introductory catch-all claim, breach of common law and statutory warranty, breach of fiduciary duty, breach of contract, violation of the Texas Deceptive Trade Practices Act ("DTPA") (Tex. Bus. & Com. Code §§ 17.41–17.63), and violation of section 3.420

of the Texas version of the Uniform Commercial Code (Tex. Bus. & Com. Code § 3.420). Dkt. 34 at 4 (citing Dkt. 7).

On April 11, 2016, Chase removed the case to federal court. Dkt. 1. On May 10, 2016, Chase filed a partial motion to dismiss Giovinale's claims except for those under section 3.420 of the Texas Business and Commerce Code. Dkt. 7. On December 16, 2016, Chase filed a motion for summary judgment. Dkt. 25. Giovinale responded and Chase replied. Dkts. 28, 31.

On March 23, 2017, the court granted Chase's partial motion to dismiss Giovinale's introductory catch-all claim and her breach of fiduciary duty claim with prejudice. Dkt. 34. The court granted Chase's partial motion to dismiss Giovinale's breach of contract, breach of warranty, and DTPA claims without prejudice and gave Giovinale leave to amend her complaint with respect to these claims. *Id.* On April 12, 2017, Giovinale filed her first amended complaint. Dkt. 35. On April 19, 2017, Chase filed an amended answer. Dkt. 36. The court also gave the parties leave to file a supplemental briefing and supplemental response on Chase's motion for summary judgment with respect to Giovinale's first amended complaint. Dkt. 37. Chase filed a supplemental briefing, but Giovinale did not respond. Dkt. 38.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its

burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

Chase moves for summary judgment on Giovinale's breach of fiduciary duty claim, DTPA claim, breach of warranty claim, breach of contract claim, and the violation of section 3.420 of the Texas Business and Commerce Code claim. Dkts. 25, 38. The court will address each of these claims in turn.

### A. Breach of Fiduciary Duty

As an initial matter, when Giovinale amended her complaint she retained allegations in support of the breach of fiduciary duty claim. Dkt. 35 at 3. Chase argues that this cause of action should be dismissed. Dkt. 38 at 2. In its March 27, 2017 order, the court did not grant Giovinale leave to amend her breach of fiduciary duty complaint and dismissed that cause of action with prejudice. Dkt. 34 at 13–14. The court need not reconsider any claims from the first amended complaint that have already been dismissed with prejudice. *Id*.

### B. Texas Deceptive Trade Practices Act

Chase argues that Giovinale's DTPA complaint should be dismissed because she omitted any reference to it in her first amended complaint. Dkt. 38 at 3; *compare* Dkt. 1, Ex. B, *with* Dkt. 35. "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *see, e.g., U.S. ex rel. Bias v.*

*Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 322 (5th Cir. 2016); *Sam v. La.*, 409 F. App'x 758, 762 (5th Cir. 2011). Here, Giovinale's first amended complaint does not refer to, adopt, or incorporate by reference the original complaint. Dkt. 35. Therefore, to the extent that Giovinale still maintains any DTPA claims, Chase's motion for summary judgment on these claims is GRANTED.

## C. Breach of Common Law and Statutory Express Warranties

Chase argues that Giovinale's breach of warranty claims should be dismissed because Giovinale failed to cure her original pleading defects. Dkt 38 at 5–6. The first amended complaint did not include any amendments to the breach of warranty cause of action. *Compare* Dkt. 1, Ex. B at 4–5, *with* Dkt. 35 at 3–4. In her complaint, Giovinale alleges that Chase "violated those common and Texas UCC warranty claims for beach [sic] of express warranty for services . . . [by] represent[ing] to the Plaintiff the quality and/or characteristics of the services and promised the services would be those of the highest quality and would at minimum include the safeguarding of Plaintiff's funds from theft of conversion as occurred here." Dkt. 1-3 at 4–5; Dkt. 35 at 3–4. Giovinale claims that Chase's representations "were the basis of the bargains" and that Chase "breach[ed] the warranties and representations given to the Plaintiff." *Id*.

In its March 23, 2017 order, the court held that Giovinale did not plead any specific facts regarding Chase's alleged statements or promises made by Chase that formed a warranty of services. Dkt. 34 at 8–10. Giovinale merely alleges that she was promised an account with services of the "highest quality" that would be safeguarded from theft. Dkt. 1, Ex. B at 5; Dkt. 35 at 3–4. The court continues to find that these allegations are vague or mere opinion in nature and thus do not give rise to a plausible allegation that an express warranty was established under common law or statute. *See* Dkt. 34 at 8–10 (citing Tex. Bus. & Com. Code § 2.313(b)). Therefore, for the same reasons as

previously outlined by the court, Chase's motion for summary judgment on Giovinale's breach of warranty claims is GRANTED. *Id.*

**D.  Breach of Contract**

Chase argues that Giovinale's breach of contract claim should be dismissed because Giovinale did not comply with her obligations under the contract to report the allegedly unauthorized transactions. Dkt. 25 at 19–21; Dkt. 38 at 6. A plaintiff in a breach of contract claim generally must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

Here, the parties agree that they entered into a valid contract governing the terms of Giovinale's banking relationship with Chase—the Deposit Authorization Agreement ("DAA"). Dkt. 25-5, Ex. 5 at 5–6; Dkt. 25-6, Ex. 2; Dkt. 25-7, Ex. 3; Dkt. 28-1 at 9; Dkt. 35 at 4; Dkt. 38 at 6.[2] Giovinale alleges that Chase breached the DAA when it (1) failed to reimburse her for the money "wrongfully transferred out of her accounts over the period of nine months," (2) failed to send monthly statements, and (3) failed to verify the signatures on Giovinale's checks. Dkt. 35 at 4. Giovinale further claims she performed under the DAA by notifying Chase of unauthorized endorsements within six months. *Id.* at 4–5. Chase counters that Giovinale did not perform under the DAA because she (1) failed to notify Chase that she was not receiving monthly statements, and (2) failed to notify Chase of the alleged fraudulent transactions within the time period required by

---

[2] There are two Deposit Account Agreements. The first was applicable beginning February 1, 2012 (Dkt. 25-6, Ex. 2) and the second was applicable beginning March 24, 2013 (Dkt. 25-7, Ex. 3). Dkt. 25 at 10; Dkt. 25-5, Ex. E (Harris Dec.). The relevant terms are identical in the two agreements. *Compare* Dkt. 25-6, Ex. 2 at 13–14, *with* Dkt. 25-7, Ex. 3 at 13–14.

the DAA.  Dkt. 25 at 19–21; Dkt. 38 at 6.  The court will review the applicable terms of the DAA and address the parties' performance obligations under each term.

### 1.  Statements

With respect to monthly statements, the DAA states:

> [Chase] will send statements monthly, unless the product information for your account indicates otherwise.  If there have been no deposits or withdrawals to your checking account within a 2-month period, or to your savings account or linked checking and savings accounts within a 30-month period, we may send you annual statements. Statements will be sent via ordinary U.S. mail, unless you and we agree otherwise.  Statements are also available through online banking.

Dkt. 25-6, Ex. 2 at 13.  Here, Giovinale alleges that she only received statements intermittently in Venezuela and that she never received statements in 2013.  Dkt. 25, Ex. A (Giovinale Dep.) at 3. Though Giovinale admits that she attributes the missing statements to the poor mail system in Venezuela, she also accuses Chase of breaching the DAA by failing to send statements.  Dkt. 25, Ex. A; Dkt. 35 at 4.  Chase counters with evidence that it sent statements to Giovinale's address of record in Venezuela until March 2013.  Dkt. 25-5, Ex. E (Harris Dec.) at 2; Dkt. 25-8, Ex. 4 at 2–5. Chase also offered evidence that it sent the statements to the new address in Miami after the disputed address change.  Dkt. 25-5, Ex. E at 2; Dkt. 25-8, Ex. 4 at 6–18.  Giovinale responds that Chase is obligated to show that "they delivered bank statements to the customer."  Dkt. 28-1 at 14.  Chase argues that the terms of the DAA only obligate Chase to send statements and make them available—not to actually confirm delivery to the customer.  Dkt. 25-6, Ex. 2 at 13–14; Dkt. 38 at

4.  Giovinale does not offer any evidence that Chase did not send the statements, she only offered evidence that she did not receive the monthly statements in 2013.[3]  Dkt. 25, Ex. A at 3.

The court finds that Giovinale failed to raise a dispute of material fact that Chase breached its obligations under the DAA by failing to send statements.

## 2.  Notification of Failure to Receive Statements

Assuming, *arguendo*, that Chase did fail to send statements to Giovinale, the DAA outlines the customer's obligation if he or she does not receive statements.  Dkt. 25-6, Ex. 2 at 14.  The DAA states that "[y]ou must notify us in writing within 30 days after we mail a statement or otherwise make a statement available (for example paperless statements) if . . . [y]ou did not receive your scheduled statement."  *Id*.  Giovinale admits that she did not contact Chase when she stop receiving statements.  Dkt. 25, Ex. A at 3.

Giovinale counters that, because the account was inactive, it was reasonable for her to assume that Chase no longer issued monthly statements on her account.  Dkt. 28-1 at 9.  Giovinale is correct that the DAA states that Chase may only send annual statements if the account is inactive.  Dkt. 25-6, Ex. 2 at 13–14.  However, the analysis does not end here.  The same provision also requires the customer to notify Chase if he or she did not receive a statement in the mail that it "otherwise make[s] . . . available."  *Id*.  The preamble notes that "[s]tatements are available through online banking."  *Id.* at 13.  Giovinale does not offer any evidence that Chase failed to make her statements available through online banking; rather she testified that she did not use online banking.  Dkt. 25, Ex. A at 11.

_____

[3] Giovinale argues that "[o]ther than an affidavit from Angela Harris, Chase does not even provide a copy of the monthly statements that were sent to Venezuela during the 2013 year." Dkt. 28-1 at 14.  The court disagrees, the statements were attached as exhibits to that same affidavit. Dkt. 25-8, Ex. 4.

Finally, Giovinale argues that it is an issue of material fact on whether she was required to notify Chase that she was not receiving monthly statements when she was expected to receive them annually. Dkt. 28-1 at 12. However, the interpretation of a unambiguous contract term is a question of law, not one of fact. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). "Ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; rather, for an ambiguity to exist, both interpretations must be reasonable." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000). Here, the court finds that the contract language regarding notification is unambiguous. Therefore, in these circumstances, the DAA obligated Giovinale to notify Chase that she was not receiving statements. Giovinale admits that she did not perform that notification until August 2013. Dkt. 25, Ex. A at 3. Therefore, the court finds that there is no genuine dispute of material fact regarding Giovinale's failure to notify Chase that she was not receiving statements.

### 3. Compensation for Losses Due to Error, Forgeries, and Unauthorized Signatures

The DAA addresses the requirements for loss compensation directly:

> You must notify us in writing within 30 days after we mail a statement or otherwise make a statement available (for example paperless statements) if:
> • An item that you did not authorize or is altered is listed on the statement;
> • Your account statement contains any errors; or
> • You did not receive your scheduled statement.
> You must notify us in writing of any unauthorized, improper, or missing endorsements within 6 months after the account statement is mailed or made available . . . If you do not comply with the requirements above, we are not required to reimburse you for any claimed loss, and you cannot bring any legal claim against us in any way related to the item or errors.

Dkt. 25-6, Ex. 2 at 14.  An "item" is defined in the DAA as: "any check, ACH, funds transfer, teller cash withdrawal, ATM withdrawal, debit card purchase, fee charge, or other amount that is added to or subtracted from your account."  *Id.* at 5.

Giovinale argues that there is a dispute of material fact on whether she notified Chase in a timely manner about the disputed withdrawals.  Dkt. 28-1 at 12.  However, there are no disputes of fact about when Giovinale reported the alleged fraud to Chase in writing—August 14, 2013.  Dkt. 28-6.  Rather, the dispute here is about whether August 14, 2013 was within the window of time that Giovinale was required to report the alleged fraud to receive loss compensation from Chase under the terms of the DAA.  This is an issue of contract interpretation which may be resolved as a matter of law because the court finds that the contract terms on this subject are unambiguous.  *Lopez*, 22 S.W.3d at 861.

### a.  Wire Transfers

With respect to the disputed electronic wire transfers, the DAA is clear that the customer must notify Chase within thirty days of Chase sending or making available a statement containing the disputed transaction.  Dkt. 25-6, Ex. 2 at 14.  The last disputed electronic wire transfer occurred on March 4, 2013 and it appears on the March 8, 2013 statement.  Dkt. 25-8, Ex. 4 at 4–5.  On August 14, 2013, Giovinale notified Chase of all the alleged fraudulent electronic wire transfers for the first time, over five months after the last disputed electronic wire transfer appeared on a statement.  Dkt. 28-6.

Therefore, the court concludes that Giovinale did not notify Chase of the disputed electronic wire transfers within thirty days as she was obliged to by the DAA.  Dkt. 25-6, Ex. 2 at 14.  Chase's

motion for summary judgment on Giovinale's breach of contract claim for the disputed wire transfers is GRANTED.

### b. Checks

With respect to the disputed check withdrawals, Giovinale argues that because her signature was forged, she did not have to notify Chase for six months. Dkt. 28-1 at 12. In the alternative, Giovinale argues that she notified Chase within thirty days of Chase sending statements containing the last five allegedly fraudulent checks. *Id.* at 13.

First, the DAA states notification for "unauthorized, improper, or missing endorsements [should be made] within 6 months." Dkt. 25-6, Ex. 2 at 14. Giovinale argues that the allegedly forged signature on the front of each check constitutes an unauthorized endorsement with a six month notification window. Dkt. 28-1 at 12.

Chase rebuts that the signature of the maker/drawer on the front of the check is not an "endorsement," and that word applies only to the signature on the back of the check made by the payee. Dkt. 31 at 2–3. The DAA does not have a definition of the term "endorsement" in its definition section, though it does have a section that illustrates how the payee endorses checks that specifically refers to the payee's signature on the back of the check. Dkt. 25-6, Ex. 2 at 5–6 ("An 'endorsement' is a signature, stamp, or other mark made on a check to transfer the check to another person."). Further, under Texas code, "indorsement" is defined as "a signature, other than that of a signer as maker, drawer, or acceptor." Tex. Bus. & Com. Code § 3.204. Therefore, under this definition, the signature on the front of the check is excluded from the definition of "endorsement."

Courts should "examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless." *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W. 2d 647, 652 (Tex. 1999). The clause that precedes the

endorsement clause refers to disputes over "items" and requires a thirty day notification window—not six months. Dkt. 25-6, Ex. 2 at 14. The definition of "items" includes checks. *Id*. at 5. That clause would not have any meaning with respect to checks if the six month provision referred to any signature on a check, not just the endorsement by the payee on the back of the check. Dkt. 25-6, Ex. 2 at 14.

All three of these arguments—harmonization of contract terms, the use of the term "endorsement" in the DAA, and the statutory definition of "endorsement"—lead the court to conclude that the term "endorsement" in the DAA was not meant to include the signature on the front of the check. Therefore, the court finds that the DAA obligates Giovinale to notify Chase of a forged signature on the front of the check within a thirty days window, not the six months month window for forged endorsements.

Here, Giovinale notified Chase of the disputed checks on August 14, 2013. Dkt. 28-6. Under the terms of the DAA, the court finds that Giovinale is not entitled to any loss compensation for fraud that was identified on bank statements sent more than thirty days before her notification, or July 14, 2013. Chase's motion for summary judgment for the thirteen checks that appeared on bank statements prior to June 14, 2013 is GRANTED.

Second, in the alternative, Giovinale argues that she notified Chase of the last five disputed checks within the thirty day window. There are four disputed check that appear on the August 8, 2013 bank statement for the first time: check number 446 ($14,000), check number 447 ($24,500), check number 448 ($740), and check number 449 ($27,200). Dkt. 25-8, Ex. 4 at 14–16. There is one disputed check that appears on the September 10, 2013 bank statement for the first time: check number 541 ($17,000). *Id*. at 17–18. Giovinale argues that she should be entitled for loss

compensation on these five checks because they were properly reported within thirty days of Chase sending the statements.  Dkt. 28-1 at 13.

Chase argues that these checks are continuations of an ongoing fraud by a "repeat wrongdoer" as defined in section 4.406(c).  Dkt. 25 at 21–22 (citing Tex. Bus. & Com. Code § 4.406(c)).  However, there is no repeat wrongdoer exception in the DAA.  Dkt. 25-6, Ex. 2. Therefore, Chase has not established Giovinale failed to perform under the terms of the DAA that requires her to report these disputed checks inside of a thirty day window.  Chase's motion for summary judgment on the breach of contract claim for the last five checks (check numbers 446, 447, 448, 449, and 541) is DENIED.

### 4.  Signature Verification on Checks

Giovinale alleges that Chase breached the terms of the DAA by failing to verify her signature on the disputed checks.  Dkt. 35 at 4.  The DAA provides that: "Check payment is highly automated . . . Although [Chase] inspects some checks, you agree that reasonable commercial standards don't require us to do so."  Dkt. 25-6, Ex. 2 at 9.  However, to the extent that the DAA required Chase to verify Giovinale's signature on the checks, Chase submitted evidence that it did actually check all the signatures.  Dkt. 25, Ex. D (Talbot Dec.) at 10.  Talbot reported that he inspected the signatures on the checks and they appeared to be "substantially similar" to Giovinale's signature on file with the bank.  *Id.*; *compare* Dkt. 28-10 (disputed checks), *with* Dkt. 25-5, Ex. 1 (signature on file).  Giovinale offers no contrary evidence that Chase failed to verify her signature on the disputed checks.  Dkt. 28-1 at 8.  The court finds that Giovinale has not established a dispute of material fact on whether Chase verified her signature on the checks.

Therefore, Chase's motion for summary judgment on Giovinale's breach of contract cause of action is GRANTED IN PART with respect to all of the disputed electronic wire transfers and the

first thirteen disputed checks and DENIED IN PART with respect to the last five disputed checks (check numbers 446, 447, 448, 449, and 541).

**E.     Texas Business and Commerce Code Section 3.420**

Finally, Chase argues that it is entitled to summary judgment on Giovinale's section 3.420 cause of action.[4]  Dkt. 25 at 19–22; Dkt. 38 at 4.  Section 3.420 codifies a cause of action for the conversion of instruments "[if] a bank makes . . . payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment."  Tex. Bus. & Com. Code § 3.420.  Chase argues that this cause of action arises only with respect to negotiable instruments, thus it only applies to the eighteen disputed checks and not to the seven disputed electronic wire transfers.  Dkt. 25 at 21 n.7 (citing Tex. Bus. & Com. Code. § 3.102); Dkt. 31 at 4.  Giovinale did not respond to this argument.  Dkt. 28.  Under Local Rule 7.4 "[f]ailure to respond will be taken as a representation of no opposition."  S.D. Tex. L.R. 7.4.  Therefore, the court will only consider this cause of action with respect to the eighteen disputed checks.  Tex. Bus. & Com. Code. § 3.104 (defining "negotiable instruments").

Chase makes two arguments in support of its motion for summary judgment on Giovinale's section 3.420 cause of action: (1) Giovinale's failure to comply with the notification terms of the DAA bars her claim, and (2) the repeat wrongdoer rule under section 4.406(c) bars Giovinale's claim.  Dkt. 25 at 19–21 (citing Tex. Bus. & Com. Code § 4.406(c)).  Giovinale counters that

---

[4] Chase objects to the changes that Giovinale made to the section 3.420 cause of action in the amended complaint because Giovinale was not given leave to amend this claim.  Dkt. 38 at 3 (citing Dkt. 35 at 3).  Though the court acknowledges that Giovinale amended this claim without leave, it does not appear she added any information that was not already in her response to Chase's motion for summary judgment and under the consideration of the court.  *See* Dkts. 28-1 at 5.  Chase did not move to dismiss the section 3.420 claim for failure to state a claim.  Dkts. 7; 36.  Striking the amendment to this cause of action would have no functional effect on the court's analysis.  Therefore, the court will consider Giovinale's arguments on this claim in full.

Chase's defenses fail because Chase exhibited bad faith and violated its ordinary duty of care. Dkt. 28-1 at 14–15. The court will address each of these arguments in turn.

### a. Giovinale's Failure to Notify Chase under the DAA

"The [Uniform Commercial Code ("UCC")] contains a comprehensive and carefully considered allocation of responsibility among parties to banking relationships." *Ross v. Bank of Am. N.A.*, 693 F. Supp. 2d 692, 693 (S.D. Tex. 2010) (Rosenthal, J.) (citing *Southwest Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 107 (Tex.2004)); *see also Am. Airlines Emps. Fed. Credit Union v. Martin*, 29 S.W.3d 86, 91 (Tex. 2000). To consider Chase's argument that Giovinale's failure to provide timely notification under the DAA bars her from recovering under section 3.420, the court will first consider the applicable provisions of the Texas code before turning to Giovinale's obligations under the DAA.

Under the Texas code, a bank may not allow a withdrawal from a customer's account without a properly payable item. Tex. Bus. & Com. Code § 4.401. When a drawer's signature is forged, the instrument lacks a valid signature and is therefore not payable. § 3.401. "A bank is presumed to know the signature of its depositor and [it] may not charge the account for checks not signed by the depositor, no matter how artistic the forgery and regardless of whether the bank was negligent." *Hatcher Cleaning Co. v. Comerica Bank-Tex.*, 995 S.W.2d 933, 937 (Tex. App.—Fort Worth 1999, no pet.) (citing *McDowell v. Dallas Teachers Credit Union*, 772 S.W.2d 183, 188 (Tex.App.—Dallas 1989, no writ); *First Nat'l Bank v. Hackworth*, 673 S.W.2d 218, 223 (Tex.App.—San Antonio 1984, no writ)).

However, the bank may assert a statutory defense to its liability for failure to identify a forged signature if it makes account statements available to the customer. Tex. Bus. & Com. Code § 4.406. In this situation, after the customer is afforded a reasonable period of time to review the statement,

the liability shifts to the customer to discover and report the unauthorized signature. *Id.* If the bank proves that the customer failed to provide notice, the customer is precluded from asserting an unauthorized signature claim against the bank. *Id.* The bank and the customer may alter their reciprocal duties under Texas code by contract, including agreeing to shorten the notification period. *Martin*, 29 S.W.3d at 97 (holding the notification period can be shortened by agreement from one year to sixty days); *Compass Bank v. Nacim*, 459 S.W.3d 95, 108 (Tex. App.—El Paso 2015, no pet.) (collecting cases where time limits for reporting have been altered by agreement).

Here, Chase is arguing that the parties modified the notification time limit to thirty days by agreement under the DAA. Dkt. 25 at 20. The court has already analyzed Giovinale's reporting requirement under the DAA and finds that Chase established that she failed to report the alleged unauthorized signatures within the required time limit for the first thirteen checks. Therefore, under both the DAA and Texas law, Giovinale is precluded from stating a claim against Chase for the monetary loss from those thirteen checks because she failed to notify Chase within by the required thirty days deadline. The court will now turn to whether the repeat wrongdoer rule bars Giovinale's statutory claims on the last five checks.

### b. Repeat Wrongdoer Rule

Chase asserts its notification defense is applicable to all eighteen checks under section 4.406(d). Dkt. 25 at 21. In relevant part, this section states:

> (d) If the bank proves that the customer failed, with respect to an item, to comply with [its duty to notify the bank of an unauthorized signature], the customer is precluded from asserting against the bank . . . [if]:
>
>> (2) the customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration

> and after the customer had been afforded a reasonable period
> of time, not exceeding 30 days, in which to examine the item
> or statement of account and notify the bank.

Tex. Bus. & Com. Code § 4.406(d).  Here, Chase alleges that all the disputed checks were forged by a single repeat wrongdoer.  Dkt. 25 at 21–22.  To assert this defense, Chase must show (1) it delivered monthly statements, (2) the statements reflected unauthorized transactions, and (3) Giovinale failed to notify the bank of the unauthorized transactions within the required thirty days.  Tex. Bus. & Com. Code § 4.406.  The court has already found that Chase met these obligations under the DAA, and the same analysis is applicable here.

Therefore, because the repeat wrongdoer doctrine applies, Giovinale is precluded from asserting a claim against Chase for any unauthorized withdrawals after she had been afforded her initial thirty day window to notify the bank of its first occurrence.  Tex. Bus. & Com. Code § 4.406(d).  As evidence that all eighteen disputed checks were allegedly forged by the same repeat wrongdoer, Chase offers that (1) Talbot stated that he was contacted by the same person on the phone repeatedly and (2) the allegedly forged signature on all eighteen disputed checks are similar.  Dkt. 25 at 22 (citing Dkt. 25, Ex. D (Talbot Dec.)).  However, Giovinale rebuts Chase's evidence of a repeat wrongdoer by arguing that the last five checks were made out to new and different payees, each of whom benefitted from large, allegedly fraudulent payments.  Dkt. 28-1 at 14.  Therefore, Giovinale argues, this is evidence that there could be new wrongdoers committing fraudulent transactions on her account and that Chase is not entitled to a repeat wrongdoer defense. *Id*.

Upon review of the final five checks, the court observes that three checks (check numbers 446 ($14,000), 448 ($740), and 541 ($17,000)) were all written to Abel Martin as the payee.  Dkt. 28-10 at 15, 17, 19.  Abel Martin was also the payee of check numbers 422, 424, 425, 427, and

429, which were paid between January and April 2013. *Id.* at 2, 3, 5, 7–8. Therefore, Giovinale has not offered evidence to establish a dispute of material fact rebutting Chase's evidence of the existence of a repeat wrongdoer for these three checks (check numbers 446, 448, and 541). Two of the final five checks, though, were made out to new recipients as payees—Alaen Gonzalez (check number 447) ($24,500) and Avanti Cat 5 Boats (check number 449) ($27,200). *Id.* at 16, 18. Because these two checks have new payees, the court finds that Giovinale has established a dispute of material fact over whether these two disputed checks were the product of a repeat wrongdoer. Therefore, Chase's motion for summary judgment on the section 3.420 claim is the DENIED IN PART with respect to the checks payable to Alaen Gonzalez and Avanti Cat 5 Boats (check numbers 449 and 449).

### c. Good Faith and Ordinary Duty of Care

Giovinale argues that Chase acted in bad faith and failed to exercise "reasonable" care by honoring the alleged fraudulent checks. Dkt. 28-1 at 14–16. Chase's defense under section 4.406 is not applicable if: (1) it failed to send or make available statements, (2) the customer shows the item was not paid in good faith, or (3) if the customer can show the bank "failed to exercise *ordinary* care in paying the item and that the failure contributed to loss," in which case the loss is a comparative negligence issue with each party being responsible for their proportionate share of the loss. Tex. Bus. & Com. Code § 4.406(e) (emphasis added). The court has already concluded that Chase has met its obligations to send or make available account statements. "The law presumes, in the absence of proof to the contrary, that the business transactions of every man are done in good faith, and for an honest purpose." *Compton v. Marshall*, 29 S.W. 1059, 1059 (Tex. 1895).

In an effort to rebut a presumption of good faith and show that Chase did not exercise ordinary care, Giovinale argues that (1) Talbot knew that she did not speak English, yet

communicated in English to someone claiming to be her over the telephone, (2) Chase suspected fraud was occurring on the account yet failed to take precautions, and (3) Chase failed to review the signatures on the disputed checks. Dkt. 28-1 at 15–16.

First, Giovinale argues that Talbot was aware that Giovinale did not speak English, but had conversations in English with a woman claiming to be Giovinale. Dkt. 28-5 (citing Dkt. 28-8; Dkt. 28-4 (Talbot Dep.) at 12). Talbot testified that he called a phone number in California listed on Giovinale's account and a person answered and only spoke Spanish. Dkt. 28-4 at 12. Talbot never identified the person who he was talking to on the phone. *Id.* To the contrary, Talbot testified that at the time of these events he did not know Giovinale only spoke Spanish. Dkt. 28-4 at 5. Therefore, Giovinale's evidence is insufficient to establish a dispute of material fact over Talbot's knowledge regarding Giovinale's lack of English proficiency.

Second, Giovinale alleges that Chase suspected fraud yet took no precautions. Dkt. 28-1 at 15. Giovinale offers evidence of emails between two Chase bankers requesting identity verification for Giovinale's accounts before approving electronic wire transfers. Dkt. 28-8. The e-mails themselves indicate that Chase took steps to verify Giovinale's identity before allowing the transactions to proceed. *Id.* Giovinale's evidence of the bankers' internal discussion regarding identity verification is not sufficient evidence to raise an issue of material fact that Chase suspected fraud and failed to exercise good faith and ordinary care in preventing it.

Finally, Giovinale alleges that Chase demonstrated bad faith and failed to exercise ordinary care when it failed to verify her signature on the checks. Dkt. 28-1 at 15 (citing Dkt. 28-4 at 9). Talbot testified that, sometime before May 2013, "I pulled up a copy of one of the cleared—several of the cleared checks and compared the signature to the signature on her signature card when she opened the account to see if they were similar." Dkt. 28-4 (Talbot Dep.) at 9. The court has already

addressed Chase's contractual obligation to verify the signature on the check, and Giovinale's reciprocal obligation to notify Chase of suspected forgeries. Moreover, Giovinale does not offer evidence that Chase failed to verify her signature. On the contrary, Chase offered evidence that it did verify her signature on all the checks through August 2013 and found them "substantially similar" to the signature on file Dkt. 25, Ex. D (Talbot Dec.) at 2–3.

Therefore, the court finds that Giovinale failed to raise a fact issue regarding Chase's lack of good faith or failure to exercise ordinary care. Chase's motion for summary judgment on Giovinale's section 3.420 claim is GRANTED IN PART with respect to all the checks except for check numbers 447 and 449.

## V. CONCLUSION

Chase's motion for summary judgment is GRANTED IN PART with respect to Giovinale's DTPA claims, the breach of common law and express warranty claims, the breach of contract claim with respect to all of the disputed electronic wire transfers and the first thirteen disputed checks, and the violation of section 3.420 claim with respect to all the disputed checks except for check numbers 447 and 449. Dkt. 25.

Chase's motion for summary judgment is DENIED IN PART with respect to the breach of contract claim for the last five disputed checks (check numbers 446, 447, 448, 449, and 541) and the violation of section 3.420 claim with respect to check numbers 447 and 449. Dkt. 25.

Giovinale's claims under the DTPA, for breach of common law and express warranty, for breach of contract with respect to all of the disputed electronic wire transfers and the first thirteen disputed checks, and for violation of section 3.420 claim with respect to all the disputed checks except for check numbers 447 and 449 are DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on August 17, 2017.

_____
Gray H. Miller
United States District Judge